JONATHAN PALMER *against* ROBERT ALLEN.

WRIT of error.

This was an action of trespass *vi et armis*, brought by *Allen* against *Palmer*, for an assault and battery, and false imprisonment. To this action, the defendant pleaded a special plea in bar; in which it was alleged, that he, *Palmer*, was a deputy of the marshal of the *United States*, for the district of *Connecticut*, and in that capacity, had in his hands a writ of attachment, duly issued under the authority of the *United States*, returnable to the district court of the *United States*, for the district of *Connecticut*, wherein the *United States* were plaintiffs and *Allen* was defendant; that by virtue of such writ, he arrested the body of the defendant, and for want of bail, committed him to prison in *New-Haven*, in said district; that on such commitment, he lodged with the

In an action of trespass, for false imprisonment, the defendant justified under a special plea in bar, wherein it was alleged, that as deputy of the marshal of the *United States*, for the district of *Connecticut*, he arrested the plaintiff, by virtue of a process in an action of debt, in favour of the *United States* against the plaintiff, returnable to the district court of the *United States*, for the district of *Connecticut*, and for want of bail, committed him to prison, having lodged with the prison keeper, a certified copy of the process, and of his return; held, that such copy was not a sufficient warrant for such commitment, and that a *mittimus* was necessary in such case.

*Qu.* Whether in an action of debt, in favour of the *United States*, returnable for trial before the district court of the *United States*, demanding 20,000 dollars damages, for a supposed breach of the provisions of the 3d. sect. of an act of congress, entitled "an act supplementary to the act, entitled an act laying an embargo on all ships and vessels in the ports and harbours of the *United States*," passed *January* 9, 1808, the district court can hold jurisdiction?

VOL. V.                                                                 Z

keeper of the prison, a true and attested copy of the writ and process, and of his return thereof; and that such writ and process, was duly returned to the office of the clerk of the district court. The process, by virtue of which *Allen* was arrested and imprisoned, was an action of debt, brought for a supposed breach of the provisions contained in the 3d. section of the act of Congress, entitled " an act supplementary to the act, entitled an act laying an embargo on all ships and vessels in the ports and harbours of the *United States.*" Vid. *Laws of the United States*, vol. 9. p. 10. It was averred in the plea, that the arrest and imprisonment above mentioned, was the same imprisonment and pretended trespass complained of, in the plaintiff's declaration. The writ and process against *Allen*, and the return of the officer, were recited at large, in the plea. To this plea, there was a demurrer, and joinder in demurrer: And the Superior Court adjudged the plea to be insufficient, and assessed damages for the plaintiff. To reverse this judgment, the present writ of error was brought.

*Daggett* and *Denison*, for the plaintiff in error.

It was claimed by the defendant in error, that the plea of the defendant, in the court below, was insufficient, on two grounds :—In the first place, that a *mittimus* was necessary to authorise a commitment : And 2. that the law of the *United States*, under which, the process issued, was unconstitutional.

We contend, 1. That in case of an attachment, in civil actions, on mesne process, even issuing under the authority of this state, a *mittimus* is unnecessary ; and especially, that the laws of the *United States*, and the usage of their courts and officers, do not require it.

2. That the law of the *United States*, under which the process was issued, is constitutional, and that the district court had jurisdiction of the cause.

*N. Smith* and *Staples*, for the defendant in error, contended, 1. That the process, by virtue of which *Allen* was arrested, was illegal and void ; and that it appeared, on the

face of it, that the district court had not jurisdiction of the cause.

2. That the marshal did not execute the process according to law.

BRAINARD, J. The original action was trespass, for an assault and battery, and false imprisonment; in which the defendant in error was plaintiff, and to which, the defendant below, now plaintiff in error, pleaded specially, that he was a deputy to the marshal of the *United States*, for the district of *Connecticut* ; and in that capacity, had in his hands to serve, a writ of attachment, issued under the authority of the *United States*, returnable to the district court of the *United States*, for said district ; in virtue of which, he attached the body of the plaintiff below ; read the writ in his hearing ; and for want of bail, committed him to the keeper of the gaol in *New-Haven*, &c. with whom he left a true and attested copy of said writ and process ; which he avers to be the same imprisonment and pretended trespass complained of, &c. To which, there was a demurrer, and joinder in demurrer. The Superior Court adjudged the plea to be insufficient : whereupon, this writ of error was brought.

The process, under which the defendant in error, was arrested, was an action of debt, brought on a statute law of the *United States*, for an alleged breach thereof. Whether that law be constitutional, or not, as it is unnecessary, would, perhaps, be indecorous to discuss ; and whether debt be the proper action, is unimportant for my purpose. The process was under a law, and issued by authority of the *United States ;* was in the hands of a marshal, and returnable to a court of, the *United States*. Service appears to have been made, by arresting the defendant's body, reading the process in his hearing, and for want of bail, commitment, &c. The authority of the gaoler to receive and keep the defendant, was a copy of the process, without a *mittimus*. Is this a justification ? Is this a defence ?

The question is, whether in *Connecticut*, in an action of debt, for instance, commenced by writ of attachment, and

returnable to our courts, the defendant can be committed without a *mittimus?* If a *mittimus* be not necessary, this case is settled, and there is manifest error. But if it be necessary, then another question arises, whether a *mittimus* should be had, in a process issued under the laws and authority of the *United States*, returnable to, and cognizable by, a court of the *United States*, to be served in this state, on a citizen thereof? The proposition is correct, that in *Connecticut*, such is her constitution, and such her laws, and system of jurisprudence, from her infancy, that no man's person shall be imprisoned, unless by judgment of court, or the direction and order of a magistrate. In every instance of final process, there is an order of commitment, a *mittimus*, contained in the body of the instrument or execution itself.—In all cases, where the subject matter has been adjudicated, by a court of competent jurisdiction, the officer's duty is pointed out; the extent of the debtor's or delinquent's liability, is ascertained; the result is made; the end is known.

On attachments, it will be agreed, on all hands, that a man shall not be committed to prison, if he procure reasonable bail. Of the reasonableness or sufficiency of this bail, who is to judge? Is the officer, in all cases, to determine this point? I apprehend not. In case of an attachment, the direction to the officer is, indeed, for want of estate, to attach the body of the defendant, and him safely keep, and have to appear before the court. But the mode of this safe keeping, and having to appear, is pointed out and provided for, by law.

The most ancient statute to be found, on the subject, entitled " an act for regulating gaols and gaolers," provides, " that no person or persons whatsoever, who shall be committed to prison, although arrested or seized by attachment, execution, or any other writ, or for non-payment of rates, debts or fines, or for any misdemeanor, or capital or criminal offence, or any other cause, without a *mittimus*, granted and signed by civil authority, declaring the cause and ground of his commitment, requiring the gaoler to receive and keep such person or persons, in the prison, until discharged accor-

ding to law." In a subsequent statute, passed in *May,* 1706, entitled " an act concerning officers' levying executions," it is enacted, " that when any officer shall have a writ of execution to levy, &c. and doth seize the body, &c. and commit him to prison, a copy of the writ or execution, signed by the officer, and delivered to the gaoler, shall be sufficient warrant, or order, for him to receive such person, and him hold in safe custody, till delivered by law."

In the revision of the statutes, in the year 1750, the phraseology of the former statute, was altered ; and the latter was incorporated with it, under the title of " an act concerning arrests and imprisonment, for debt, damage, fines," &c. This statute has remained the same, ever since ; and its provisions, in relation to this subject, are as follows : " that no person or persons, for the non-payment of rates, fines, debts, or for any crime or offence, shall be committed to prison, without a *mittimus,* granted and signed by civil authority, declaring the cause and ground of his commitment, requiring the gaoler, master, or keeper of the prison, to receive and keep such person or persons within the prison, until discharged according to law ; unless where any proper officer, for want of estate, seize the body or bodies of any person or persons, by execution or distress, or warrant for fines or rates, and commit him or them to prison ; in which case, a copy of the execution or distress, attested and signed by such officer, and delivered to the gaolar, master or keeper of the prison, shall be a sufficient warrant or order, for him to receive such person or persons ; and him or them to hold in safe custody, till delivered by law." (*a*)

From the broadness of the ancient statute, it is apparent, that, in relation to all process, civil or criminal, mesne or final, no person could be committed to prison, without a *mittimus,* an instrument stating the cause, ordering the reception, and directing the detention, signed by a magistrate, or, as the expression is, " civil authority."

In 1706, it occurred to the legislature, that part of this provision was unnecessary ; that in final process, there was

(*a*) Vid. *Stat. Conn.* tit. 13. c. 1. proviso to s. 1.

Nov. 1811.

PALMER
v.
ALLEN.

a *mittimus*, in relation to that subject, from the highest authority ; hence the legislative dispensation with regard to a *mittimus*, in cases of executions.

When the legislature, in 1750, incorporated the latter statute, which made a distinction between final and mesne process, into the former, can it be supposed, that they intended to narrow the grounds of the ancient provisions and regulations ? At the same time, it also occurred to the legislature, that there were other cases than those of executions, where a *mittimus*, in the sense generally understood, would not only be unnecessary, but improper ; hence, the exemption was extended to distresses or warrants for fines or rates.

The present statute says, that no person, for the non-payment of rates or fines, shall be committed to prison, without a *mittimus ;* unless, indeed, a distress or warrant, for such rates or fines, has been granted by proper authority, having competent jurisdiction.

The word " debts" in the statute, still remains to be satisfied with a fair and reasonable construction. The original title of the act was, " an act concerning arrests and imprisonment for debt, damage, fines," &c. Suppose the language to be, that in an action for debt, no person shall be imprisoned without a *mittimus.* This would comprehend all actions of debt, in a proper and technical sense ; of course, it would comprehend the claim in the action under consideration. But this, I apprehend, is too narrow a construction. The true meaning is such, as to include all actions by attachment, by which any debt or damage is sought to be recovered ; and which, by legal process, may be reduced into debt or damage. In all which cases, while in mesne process, before adjustment, there shall be a *mittimus*, to authorise a commitment ; after which, when liquidated, the execution itself contains a sufficient authority.

But the statute, since its existence in its present form, seems pretty generally, to have received an uniform practical construction. The best comment, perhaps, that can now be made upon it, is, so far as I can learn, that it has received, in practice, in relation to mesne process, the same

construction that was given to the former statute, in relation to the same subject, and which the words of that statute absolutely and necessarily required. Both by the former, and present statutes, in all cases of attachment, a *mittimus* has been deemed necessary to authorise a commitment.

But a second, and perhaps, a more important question, remains. In mesne process, by attachment, for debt, issued under the law and authority of the *United States*, returnable to a court of the *United States*, to be served on a citizen of this state, within the same, to authorise a commitment, is a *mittimus* necessary ?

The *United States* have a right to prescribe what mode of service for their own processes, they may deem proper ; and if they have pointed out a mode, that mode must be pursued; if they have not, it should seem fair reasoning to conclude, that they had left that subject to the existing regulations of the several states. The *United States* have a statute, entitled " an act for regulating processes in the courts of the *United States*," &c., in which, (Laws of the *United States*, vol. 2. s. 2. p. 103.) it is enacted, " that the form of writs, executions and other process, except their style, and the forms and modes of proceeding, in suits at common law, shall be the same as are now used in the said courts respectively, in pursuance of the act, entitled, an act to regulate processes in the courts of the *United States*." What those forms and modes are, the statute no where specifies, other than by the above reference ; and the same statute expressly repeals the whole of the act referred to. On recurrence, however, to that statute, we find it there enacted, " that the forms of writs, &c. and modes of process in the circuit and district courts, in suits at common law, shall be the same in each state respectively, as are now used, or allowed, in the supreme courts of the same."

But it has been said, that a *mittimus* is no part of the process. If I am correct in my conclusion, on the first point, it is, by the law of this State, a part, and essential to the completion of service, in case of commitment. If part of the service, it is part of the process. Process, in one sense, is the method to be pursued by law, to compel a compliance

with the original writ, by giving the party notice to obey it ; a warning to appear in court, at the return of the orignal writ: On failure of obedience, further process is said to be had, by attachment, &c.

I understand, that the word " process," as used by the legislature of the *United States*, in the statute referred to, is to be received in its broadest and most extensive sense. It is to be taken for all proceedings in any action, from the beginning to the end. Mode of process, includes mode of service. Whatever is necessary to complete the service of a writ, returnable to a state court, is by that statute, made necessary, to complete the service of a writ returnable to a district or circuit court of the *United States*. A *mittimus* is as necessary in one case as the other.

But, it may be said, that there is no provision in the laws of the *United States*, for procuring a *mittimus* ; and that of course, there may be a failure of justice. When the legislature of the *United States* referred to the laws of the several states, they were bound to know them, and to make provisions correspondent with them ; and I am not prepared to say, that they have not. I am not prepared to say, that it would not be the duty of the judges and justices of this State, on application of the marshal, to grant a *mittimus*. Besides, they have, in each district, at least, one judge peculiarly their own. Sufficient is it, that they have the power of making all necessary provisions on this subject. They do, in many instances, call into their service, the judges and justices of the state courts, and make them, *pro hac vice*, their own ; thus, authorising them to take bonds of recognizance, in cases of prosecutions for breaches of the laws of the *United States*, and in various other instances. But, in the words of a great man, and eminent judge, " if the law does not work right, let the legislature mend it ; it is their business."

I am of opinion that there is no error.

MITCHELL, Ch. J. REEVE, TRUMBULL, EDMOND, and SMITH, Js. concurred in the foregoing opinion. INGERSOLL, J. having been of counsel in the cause, did not judge.

BALDWIN, J. I differ in opinion, only on the necessity of a *mittimus* for a legal commitment, by the marshal of the *United States*, on attachment for debt.

I am of opinion, that a *mittimus* is not necessary, by the statute of *Connecticut*, to authorise a commitment, on attachment, in any civil case; and if it were, I doubt whether it would be obligatory on the marshals of the *United States*. It will not, I presume, be contended, that the marshals are bound by a mode of proceeding, which may have been used, by the executive officers of the state, unless the same was required, or has been sanctioned, by the laws of the state. If the practical construction of the state officers, can give a binding effect, to the statute of the state, on them, which the letter does not require, I apprehend, that a contrary construction by the marshals, sanctioned by the subsequent act of Congress, in 1792, requiring that the modes of proceeding in suits, should be the same in future, as had been adopted, and used, in pursuance of the former act, will be equally binding on them. I do not know, that there has ever been a judicial construction of the statute in question. I admit, that the practice among our state officers, (through abundant caution) has been to commit by *mittimus*, in all cases of arrest, except on execution; but it will also be admitted, that this practice was never followed, by the marshals of the *United States*. Ever since the establishment of the judiciary of the *United States*, a period of more than twenty years, they have uniformly committed, in cases of attachment, by copy of their writ. We ought, then, as the question now comes up for judicial decision, to give the proper effect to the provisions of the two statutes, independent of such practical constructions.

I will, then, examine, whether the statute of *Connecticut* requires a *mittimus* for commitment on attachment?

1. This statute, owing to repeated alterations, and compilations from materials enacted at different times, is not explicit, or very intelligible. Its history will probably give some aid in its construction.

As early as 1650, it was enacted, that no man's person should be arrested or imprisoned for any *debt* or fine, if satisfaction could be found from his estate. At that time, no arrest, or attachment of the person, was allowed for debt. The ordinary process was by summons ; and on default of appearance, an attachment for the contempt, issued by order of the court. By subsequent provisions, and particularly at the revision in 1672, an attachment was allowed as an original process, in certain cases, and the form was then given. In 1702, the plaintiff was allowed a summons, or an attachment, at his option, in all civil actions. In 1693, a *mittimus* was first required, to authorise a commitment ; and at the revision in 1702, it was extended, and made necessary, in all cases, civil, or criminal. The words are " that no person shall be committed to prison, although arrested or seized, by attachment, execution *or any other writ,* or for non-payment of rates, *debts,* or fines, or for any misdemesnor, or capital or criminal offence, *or any other cause,* without a *mittimus,* &c. Inconvenience was soon experienced, and in 1706, a commitment by copy, was authorised, in case of arrest on execution. At the revision in 1750, the statute took its present shape, *viz.* " That no person shall be arrested and imprisoned, for any *debt, damage,* or *fine,* where sufficient means of satisfaction can otherwise be found from his estate : Provided, that no person, for the non-payment of rates, fines, or *debts,* or for any crime or offence, shall be committed, without a *mittimus, granted and signed by civil authority,*" &c. " unless the body has been taken by execution, or distress, or warrant for fines or rates, in which case, a copy of the execution or distress, attested and signed by the officer, and delivered to the gaoler, shall be a sufficient warrant or order," &c. By omitting from the last statute, in the clause requiring a *mittimus,* the expressions " *arrested by attachment, or any other writ, or any other cause,*" and by adding to the exception, " an arrest by distress or warrant," for which a copy only is required, it is evident the legislature meant to limit the necessity of a *mittimus.* By the letter of the act, as it now appears, it is not required on an attachment for trespass, tort, case or

any other civil cause, unless it is on an attachment for debt; and it can hardly be presumed, that the legislature would thus dispense with it, in all other cases, and retain it in that; nor that, under an expression of doubtful import, they meant to include all manner of attachments.

All doubt, it appears to me, will be removed, by giving that meaning to the word *debt*, as here used, which it had when first introduced into this statute, before an attachment of the person was allowed on mesne process, in any case. It there evidently means a judgment debt, (for there could then be no arrest for non-payment of any other,) in which sense, it will include as well damages recovered for tort, as for money due on contract. As no mention is made, in the existing statute, of mesne process, by attachment, in any case, and the word *debt*, cannot apply to the variety of demands, which may be the subject of attachment, and as no reason can be assigned why that alone should be selected, I conclude, the legislature, when they altered the statute, did not mean to include any arrest, by attachment, on mesne process. The terms, also, of the ancient statute were, that no person shall be committed without a *mittimus*, although arrested by attachment, *or* for non-payment of rates, *debts*, or fines. Those of the present statute are only, that no person for " non-payment of rates, *debts*, or fines," shall be committed without a *mittimus ;* unless, by execution, &c. The first makes a distinction between a commitment on attachment, and a commitment for non-payment of a debt, &c., a distinction which is obvious. At the time of the attachment, no debt is ascertained ;—the officer has no power to collect any. He is merely, to secure the appearance of the person arrested, before the proper court, to try the question of indebtedness. The officer has no power to commit, if the person attached, will procure bail for his appearance ; if not, he is to be imprisoned, not for the non-payment of the debt, but to secure his appearance at court. Whether he is indebted, is a question *sub lite*. To say he withholds the debt, is to prejudge the cause. I am, therefore, of opinion, that the non-payment of the debt, mentioned in the statute, has no refer-

ence to mesne process, and that there is no occasion, by our statute, for a *mittimus*, to commit, in any case, except for crimes. Such, I contend, is the true import of the statute in question ; and such, I think, is the construction all would give it, if a different practice of our officers, had not created a doubt.

2. If it were evident, that our statute required a *mittimus*, in such case, I have serious doubts, whether it is applicable to the process of the *United States.*

It seems to be agreed, that the *mittimus* required by our statute, must be " granted and signed by civil authority" of this state. This they are neither authorised, nor compelled, by any law of the *United States*, or of this state, to do, in such a case. In cases where it is deemed necessary for the civil authority of the states, to aid in executing the laws of the union, power is specially given them to do so ; as in all cases of a criminal nature, and in taking depositions, &c. ; but there is no authority given to them, or duty imposed on them as magistrates, to aid the execution of their civil process ; and to expect it of them, or to leave it optional with them, to give or withhold their aid, would be derogatory to the general government. They are an independent sovereignty. Their officers must have all the power incident and necessary to the execution of the duties of their offices.

By a statute of this State, passed in 1794, " permission is given to marshals and other officers of the *United States*, to use our gaols to confine persons under the authority of the *United States*, with the same authority in the keeping of prisoners, under the authority of the *United States*, as the keepers of said gaols under the authority of this State have." The effect is, and was intended to be, to take away all control or responsibility from keepers of the gaols, under the authority of this State, as to prisoners confined by the authority of the *United States.* The prison-keeper of the sheriff, as such, has no power to receive a prisoner under the authority of the *United States.* He must have a special power from the marshal, to enable him to act as keeper under their authority. Such parts of the prison as may, at any time, be

Nov. 1811.

PALMER
v.
ALLEN.

used for such purpose, by the officers of the *United States*, is as distinct from the other, and from the control of the state officers, as though it were a distinct building. As such it ought to be considered. Neither the sheriff, nor the county, is responsible for the safety of the prisoners. The keepers may be, and sometimes are, different; or if the same person is the keeper of both, he acts in different capacities, and under different authority. Hence, I infer, that the keeper of the prison of the *United States,* has no power to commit on civil process, by the authority of the State; nor, I contend, have the civil authority of the State, any power to require it; and yet, if a *mittimus* is necessary by our statute, it must be "granted and signed by civil authority" of the state, directed to the keeper of the gaol of the *United States,* commanding him, by the authority of the state of *Connecticut,* to receive and hold the prisoner, under the authority of the *United States.* I may add also, that if the *mittimus* is to be considered, as a writ or process, included in the act of Congress, its form must be that of *Connecticut;* but the style that of the *United States;* that is, it must issue by the authority of the *United States,* bear teste of the proper judge, and be sealed and signed by the clerk. But in such a case, it would not have the requirement of our statute, by being granted and signed by civil authority of the state; and the *United States* have no analogous civil authority to execute the power.

Does it then follow, as has been said, that the process by attachment must be abandoned? I think not. The party claiming a debt, has a right to the advantages of such a writ, and when the officer shall have done his duty in making the arrest, if no provision is made by law, directing the mode of commitment, he must take a reasonable course, such as would be sanctioned by the principles of the common law, and such as was probably used, before we had any law requiring a *mittimus*, in any case. Having arrested the prisoner, by legal process, the officer becomes responsible for his appearance at court, and on failure to procure bail, he is bound to hold him in custody. His place of custody is the

Nov. 1811.

PALMER
v.
ALLEN.

prison.   The same warrant which commanded the arrest, required the officer to keep his prisoner safely, so that he might be had before the court.   The officer was, therefore, authorised to commit.   Still, it is reasonable and proper, that the keeper of the prison should be able to show the cause and ground of the commitment, and of his holding the prisoner in custody.   This he will be enabled to do, more fully, and more satisfactorily, by the copy of the process, and the doings of the officer thereon, than by the *mittimus* usually granted. This is the course required by our statute, on commitment by execution, distress, or warrant, and is that which, I apprehend, the common law, in similar cases, would require.

It appears to me, therefore, that on either ground, and most clearly on the first, there was no occasion for a *mittimus*, to complete the justification of the officer, and that his plea was sufficient, and ought so to have been adjudged.

SWIFT, J. concurred in the opinion last expressed.

Judgment affirmed. (*a*)

(*a*) The judgment in this case, was reversed, on a writ of error brought before the Supreme Court of the *United States*.  Vid. 7 *Cranch*, 550.